JOHN S. LEONARDO
United States Attorney
District of Arizona
KEVIN M. RAPP
Arizona State Bar No. 014249
Kevin.Rapp@usdoj.gov
ANDREW C. STONE
Arizona State Bar No. 026543
Andrew.Stone@usdoj.gov
Assistant United States Attorneys
Two Renaissance Square
40 N. Central Avenue, Suite 1200
Phoenix, Arizona 85004
Telephone:  602-514-7500
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                    Plaintiff,<br><br>          vs.<br><br>Steven Audette,<br><br>                    Defendant. | CR-14-00858-1-PHX-SPL<br><br>**GOVERNMENT'S SENTENCING MEMORANDUM** |

The United States of America requests a sentence of 180 months.  For over 20 years, Defendant engaged in fraudulent conduct that financially ruined his victims, while also causing long-lasting psychological damage.  Despite the pain caused by Defendant, he remains steadfast in his conviction that he did nothing wrong.  Rather than demonstrating some remorse to the victims after the jury found him guilty of all 91 counts alleged in the Indictment, Defendant has filed dozens of motions proclaiming his innocence, criticizing his advisory counsel, raising unsupported allegations about the Court's bias, and accusing the government of engaging in prosecutorial misconduct.  Defendant has given no indication that he has learned anything from his criminal conduct, and, the government believes, would engage in the same type of behavior as soon as he is released from custody. For these reasons, a lengthy prison sentence is warranted.

## I.   The Sentencing Guidelines Calculation Results in a Sentence of 210-262 Months.

The Presentence Investigation Report (Doc. 272) (PSR), calculates a total offense level of 27, and a criminal history category I, which results in a guideline range of 70-87. The United States filed objections to the PSR (Doc. 277), which argued that Defendant's total offense level is actually a level 37, due to the addition of ten levels based on Defendant's conduct.  With a total offense level of 37, Defendant's guideline range is 210-262.[1]

The government requests a sentence of 180 months, or 15 years, which is 2.5 years less than Defendant's minimum guideline sentence.  Even though 15 years is a below-guideline sentence, the government believes it is sufficient, but not greater than necessary, to comply with the statutory sentencing factors.

## II.   The § 3553(a) Factors Support a Sentence of 15 Years.

A sentence of 15 years balances the seriousness of the offense and the need to promote respect for the law, provide just punishment, afford adequate deterrence, provide restitution, and avoid unwarranted sentence disparities, on the one hand, with Defendant's history and characteristics, on the other hand.

---

[1] Defendant's total offense level is the same whether the Court uses the current Guidelines Manual (that took effect on November 1, 2016), or the Guidelines Manual in effect November 1, 2012, that the PSR used for *ex post facto* reasons.  (PSR ¶ 25.)  The PSR chose to use a previous Guidelines Manual, because "an additional two levels for creating a substantial hardship to the victims was not applicable in 2013 when the offense conduct ceased."  (*Id.*)  However, as the government made clear in its objections to the PSR (Doc. 277), the loss amount caused by Defendant was over $2.5 million, which results in an 18-level increase under the guidelines that took effect on November 1, 2012.  Under the current guidelines, the loss amount would need to be over $3.5 million to result in the same 18-level increase, and the actual loss amount—$3,430,676.00—falls short.  But, as the PSR makes clear, the current guidelines contemplate a two-level increase if the offense "resulted in substantial financial hardship to one or more victims."  USSG §2B1.1(b)(2)(A)(iii).  Based on the victims' testimony at trial, this increase would apply.  Accordingly, under either Guidelines Manual, Defendant's total offense level is a 37.

**A.     Nature and Circumstances of the Offense.**

Defendant's 20-year fraud scheme was not a run-of-the-mill type fraud.  It was different and caused a tremendous amount of pain and suffering to the victims.  As the Court heard at trial, the four victims who testified painted a picture of both financial and emotional ruin.  Financially, L.M. and L.A.M. lost retirement accounts, savings, trusts, and real estate.  (PSR ¶ 20.)  Emotionally and psychologically, their loss is not as easily quantifiable, but perhaps is best captured in L.A.M.'s admission at trial that she contemplated suicide as an escape from Defendant's constant threats and demands for money.

Defendant's crime differs from other fraud offenses.  Unlike many other cases that involve misrepresentations about an investment opportunity, which may range from real estate, a can't-miss-product, or even an individual's aptitude for obtaining better than normal returns in the stock market; this case was more personal.  Defendant developed relationships with the victims and, initially, preyed on their generosity and friendship, and then eventually their fear.  Defendant made the victims believe their family members' lives were in danger.  Their spouses.  Their parents.  Their kids.  All would suffer unimaginable hardship and possibly even death, if the victims did not continue to send money to Defendant.  Defendant's actions were not those of a typical fraudster.  Defendant caused much more than just financial loss to the victims, he caused emotional and psychological devastation.

**B.     Defendant's History and Characteristics.**

Defendant's history and characteristics also support a 15-year sentence.  First, Defendant is an intelligent man who earned a graduate degree and had the means to earn a very comfortable living through legitimate means.  Despite earning his Doctor of Chiropractic degree in 1986, he only worked as a chiropractor for seven years.  (PSR ¶ 61.)  Even if Defendant did not enjoy his work as a chiropractor he could have certainly transitioned to another profession (he graduated from college with two degrees, psychology and theology, in only four years), yet he has not worked since 1997.  (PSR ¶ 60.) Defendant

had both the ability and the wherewithal to continue as a contributing member of society, but instead chose to engage in threats and intimidation to earn millions of dollars without working.

Second, Defendant has decided to live in the lie, rather than accept responsibility for his actions. Defendant has maintained his innocence even after the jury found him guilty of 91 counts in less than two hours. He blames everyone else for his plight but himself. In various motions to the Court he has suggested his stand-by defense counsel was ineffective, the Court was biased, the prosecution engaged in misconduct, and, despite having testified for a number of hours at trial, complained he was not permitted to tell his "story." Defendant's near total lack of remorse suggests he would pose a high risk to re-offend. Defendant's actions both during and after the fraud more than justify a 15-year sentence.

**C.   Affording Adequate Deterrence.**

A significant term of incarceration is warranted to afford adequate deterrence. Defendant chose to give up a life as a productive member of society to prey on victims through threats and intimidation. Defendant has not been employed in his chosen profession since 1993 and has not been employed at all since 1997. (PSR ¶¶ 60-61.) Defendant proved skilled at separating the victims from their money and the opportunity to obtain millions of dollars without working is a draw both to this Defendant in particular, and others in our society. A lengthy sentence would send the appropriate message to everyone that this type of conduct is outrageous and will not be tolerated.

**D.   Avoiding Unwarranted Sentence Disparities.**

A significant term of imprisonment is necessary to avoid unwarranted sentencing disparities. According to the most recent information collected by the United States Sentencing Commission, in 2015, the median loss for all offenders sentenced under §2B1.1 was $130,301. Further, nearly 80% of all offenses involved loss amounts of $1 million or less, which puts Defendant comfortably in the top-20% of all offenders.

- 4 -

1    The average guideline minimum is 34 months for offenders sentenced under
2    §2B1.1, and the average sentence imposed is 24 months.  Accordingly, §2B1.1 offenders
3    received sentences that were around a 30% reduction from the low end of the guidelines.
4    Here, Defendant's minimum guideline sentence is 210 months (if the Court agrees with the
5    government's objections to the PSR).  The government is requesting a sentence of 180
6    months, which provides Defendant with about a 15% reduction from the low end of the
7    range.  *See* United States Sentencing Commission, *Quick Facts: Theft, Property*
8    *Destruction,      and      Fraud      Offenses*      (August      2016),
9    http://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-
10   facts/Theft_Property_Destruction_Fraud_FY15.pdf.

11   Defendant deserves harsher treatment than the average §2B1.1 offender due to the
12   personal nature of his fraud and the non-economic damage he caused the victims to suffer.
13   These statistics support a 15-year sentence for Defendant.

14   **III.    Conclusion.**

15   For all of these reasons, the government requests a sentence of 15 years, to be
16   followed by three years of supervised release.  The government also requests restitution be
17   ordered in the amount of $3,430,676.

18   Respectfully submitted this 13th day of December, 2016.

19                                    JOHN S. LEONARDO
20                                    United States Attorney
                                      District of Arizona

21

22                                    *s/Andrew C. Stone*
                                      KEVIN M. RAPP
23                                    ANDREW C. STONE
                                      Assistant U.S. Attorneys

24

25                          **CERTIFICATE OF SERVICE**

26   I hereby certify that on the 13th day of December, 2016, I electronically transmitted
     the attached document to the Clerk's Office using the CM/ECF System for filing a copy to
27   the following CM/ECF registrants: John McBee

28   *s/Gaynell Smith*
     U.S. Attorney's Office